MEMORANDUM OF LAW OF PETITIONER
CURTIS BRANDON, IN SUPPORT OF
WHY THIS COURT SHOULD GRANT HIS FED.R.CIV.P. RULE 60(b) MOTION

I. WHERE THE TRIAL COURT LACKED JURISDICTION MAKING THE JUDGMENT VOID

1. This case implicates the State's trial court lacked personam jurisdiction and subject matter jurisdiction because, the Commonwealth's Criminal Conspiracy Complaint to homicide against Petitioner does not state the docket number of the Criminal Complaint issued for the other alleged participants' (alleged codefendants' arrested prior to Petitioner), does not state Petitioner's address, date when the offense allegedly was committed, place where it was committed, what time and date, the victim's name, nor signed by any Commonwealth district attorney, in violation of 42 Pa.R.Crim.P. Rule 132(2)(3)(4)(5) at the time of Petitioner's arrest dated September 2, 1988. See 42 Pa.R.Crim.P. Rule 132(2)(3)(4)(5) (Renumbered 42 Pa.R.Crim.P. Rule 504). The trial court lacked jurisdiction, by there not being a valid Criminal Conspiracy Complaint -- there was not a criminal case for Petitioner to stand held for a criminal trial by no criminal case, constituting that Petitioner's criminal conviction judgment is void. See (Ex. "A" at "p. 2"). ¶

I. BACKGROUND

2. At the date of Petitioner's arrest by the Commonwealth's Criminal Conspiracy Complaint to homicide dated September 2, 1988, the rules governing "Complaints: Joinder Of Offenses And Defendants" was 42 Pa.R.Crim.P. Rule 131, that stated in relevant part the following:

> "Pa.R.Crim.P. 131
> Complaints: Joinder Of Offenses and Defendants
> (a) When more than one person is alleged to have participated in the commission of an offense, the issuing authority shall accept a complaint for each person charged. Each complaint shall contain the names of all persons alleged to have participated in the commission of the offense and shall contain a reference to the docket number of the complaints issued for the other alleged participants."

Id., 42 Pa.R.Crim.P. Rule 131(a) (Renumbered now as 42 Pa.R.Crim.P. 505(A)). ¶

3. Also, this fact makes the conviction judgment void also because, the prosecutor convinced the trial court to instruct the jury on accomplice liability as an lesser-included offense charge to Criminal Conspiracy, making the judgment void. ¶

5

4. By Pennsylvania's Crimes Code 18 Pa.C.S. § 306 Accomplice Liability is a wholly distinct criminal charge that, is not a lesser-included offense charge to 18 Pa.C.S. § 903 Criminal Conspiracy. See COMMONWEALTH V. PETRIE, 227 Pa. Super. 239, 242, 419 A.2d 750, 751-752 (1980). Therefore, the accomplice liability jury instruction charge violated Petitioner's Sixth Amendment rights (where it provides in relevant part: "and to be informed of the nature and cause of the accusation) in conjunction with both "Due Process Clauses" and "Equal Protection Of The Law Clause" of the Fifth and Fourteenth Amendments of the Federal Constitution because, there was not a valid Criminal Conspiracy Complaint to homicide for 18 Pa.C.S. § 903 and, Petitioner was not charged with 18 Pa.C.S. § 306 Accomplice Liability in any Criminal Complaint ( Ex. "A" at "p. 2").[2] The State's trial court erroneously gave the accomplice liability jury instructions assuming it was a lesser-included offense instruction charge to Criminal Conspiracy to homicide. Stirone made it clear that no court can give a instruction jury charge to the jury that the defendant was not charged with in the criminal complaint/information nor indictment. See STIRONE V. UNITED STATES, 361 U.S. 212, 216 (1960); COMMONWEALTH V. WAGNER, 486 Pa. 548, 406 A.2d 1026 (1979); COMMONWEALTH V. SLAUGHTER, 525 Pa. 568, 583 A.2d 427 (1990); U.S. V. SPINNER, 180 F.3d 514, 516 (3rd Cir. 1999); LUCAS V. O'DEA, 179 F.3d 412, 418-419 (6th Cir. 1999); UNITED STATES V. PAZSINT, 703 F.2d 420, 423 (9th Cir. 1983). Petitioner was never informed of 18 Pa.C.S. § 306 Accomplice Liability via the Criminal Complaint nor Criminal Information. ¶

I. DISCUSSION

5. The Magistrate Judge's legal analysis was misplaced that the State trial court gave the statutory 18 Pa.C.S. § 306(c)(1)(West 1988) jury charge language for accomplice liability found appropriate in COMMONWEALTH V. GIBSON, 688 A.2d 1152, 1167-68 (Pa. 1997). See Mag. Report at "pp. 41-42," (4/15/2003).

---

2. Pennsylvania's "8.306A (Crim) Liability For Conduct of Accomplice Jury Instructions" Subcommittee Note states: "The Court should not charge on the accomplice theory where to do so would be inconsistent with a bill of particulars or otherwise violate the defendant's right to notice and a fair hearing. (Citations omitted).

The State's trial court can <u>not</u> give a jury charge that Petitioner was <u>not</u> charged with in the Criminal Complaint nor Information nor Indictment. The reconstruction Congress placed limitations on the States, when it enacted the Fourteenth Amendment, to guarantee that <u>no</u> State shall violate the Federal Constitution by stating:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

<u>Id.</u>, U.S. Const. Am. XIV.  ¶

    6. It is well-established that the Fourteenth Amendment Due Process Clause significantly altered the restrictions and oversight placed upon the States. <u>See generally</u> Akhil Reed Amar, <u>The Bill Of Rights And The Fourteenth Amendment</u>, 101 Yale L.J. 1193 (1992). Many limitations that had previously only been applied against the Federal government were "held to be embraced within the Fourteenth Amendment" and, thus, to place prohibitions upon the States. <u>See</u> <u>UNITED STATES V. CAROLENE PRODUCTS CO.</u>, 304 U.S. 144, 152 n. 4 (1938). In order for State process to be adequate, various protections afforded by the Constitution and the Bill Of Rights were incorporated against each State. <u>See, e.g.</u>, <u>DUNCAN V. LOUISIANA</u>, 391 U.S. 145 (1968)(right to a criminal trial); <u>MIRANDA V. ARIZONA</u>, 384 U.S. 436 (1966)(privilege against compelled self-incrimination and right to counsel); <u>NEW YORK TIMES CO. V. SULLIVAN</u>, 376 U.S. 254 (1964)(right to freedom of speech and press); <u>GIDEON V. WAINWRIGHT</u>, 372 U.S. 335 (1963)(right to counsel). Therefore, Petitioner's defense trial counsel should have objected to the invalid Criminal Conspiracy Complaint to homicide to preserve the claim on direct appeal if the court rejected it.  ¶

    7. Heightened review of the State laws and judicial processes was a necessary component of these increased restrictions. Put succinctly by the Third Circuit, the battle against Federal interference with some of these State processes was lost when the Fourteenth Amendment was adopted. The Amendment, as every high school [student] knows, forbids States to deprive a person of life, liberty or property without due process of law. That confers federal power to prevent States from doing the forbidden thing. <u>See</u> <u>UNITED STATES EX. REL. ELLIOT V. HENDRICKS</u>, 213 F.2d 922, 928 (3rd Cir. 1954).  ¶

8. Central to Federal jurisprudence is the concept that the violation of any right has a remedy in law. When a State is alleged to have violated a protected right, it is necessary for some remedy to be available. See MARBURY V. MADISON, 5 U.S. (1 Cranch) 137, 162-163 (1803)("The very essence of civil liberty consist in the right of every individual to claim the protection of the law whenever he receives an injury."). The fourteenth Amendment's command that no "State [shall] deprive any person of life, liberty, or property, without due process of the law," presupposes that the federal courts will be available to order redress for State infringement of a protected right. Some oversight by the federal judiciary is necessary to ensure accurate application of Federal law because, it has always been understood that federal courts hold final dominion in the interpretation of Federal laws. The necessity of such federal review is acknowledged in Justice Story's famous opinion in MARTIN V. HUNTER'S LESSEE, 14 U.S. (1 Wheat) 304 (1816), where he stated:

> "[A]dmitted that the judges of the state court are, and always will be, as of much learning, integrity, and wisdom, as those of the courts of the United States (which we cheerfully admit) does not aid in the argument [that they cannot be reviewed]....The Constitution has presumed (whether rightly or wrongly we do not inquire) that the state attachments, state prejudices, state jealousies, and state interest might sometimes obstruct, control, or be presumed to obstruct or control, the regular administration of justice."

Id., 14 U.S. (1 Wheat) at 346-347. ¶

9. Indeed, the drafters of the Fourteenth Amendment were keenly focused on the need for federal oversight, where their duties require it, this is the inescapable obligation of federal courts; being their authority is expressly confirmed in the All Writs Act, 28 U.S.C. § 1651. This statute has served since its inclusion, in substance, in the original Judiciary Act as a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law,'" that extends to federal habeas corpus proceedings. See HARRIS V. NELSON, 394 U.S. 286, 299-300 (1969). Therefore, this Court can entertain Petitioner's Fed.R.Civ.P. Rule 60(b)(2)(3)(4) and (6) Motion. ¶

8

10. In this case Petitioner is presenting a prima facie case also to ineffective assistance of counsel that, rebuts the presumption of correctness 28 U.S.C. § 2254(d)(e)(1) because, defense trial counsel should have known the Commonwealth did <u>not</u> have a valid Criminal Conspiracy Complaint to homicide and, the State's trial court could <u>not</u> have instructed the jury on accomplice liability since that is a wholly distinct criminal charge that is <u>not</u> within the four corners of the Criminal Complaint nor Information and, is <u>not</u> a lesser-included offense charge to 18 Pa.C.S. § 903 Criminal Conspiracy charge, <u>id</u>., <u>Petrie</u>, at 242, 419 A.2d at 751-752; <u>Stirone</u>, 361 U.S. at 216; <u>Spinner</u>, 108 F.3d at 516; <u>Lucas</u>, 179 F.3d at 418-419; <u>Pazsint</u>, 703 F.2d at 423. Petitioner's defense trial counsel is held responsible for having the knowledge of what all information the Commonwealth must have listed in the Commonwealth's Complaint, for proper notice to Petitioner, to prepare a defense thereto and, where the Complaint is insufficient defense trial counsel has a duty to protect Petitioner's Sixth Amendment rights in conjunction to both Fifth and Fourteenth Amendment rights of the Federal Constitution. ¶

A. DEFICIENT PERFORMANCE

11. Defense counsel's representation is deemed ineffective where it "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 668, 687-688 (1984). However, the presumption of correctness does <u>not</u> apply if the State court's records are <u>not</u> supported by the record because, pre-AEDPA standards of review come into play, that this Court is required to review de novo pure questions of law and mixed-questions of law and fact, <u>id</u>., <u>Appel</u>, 250 F.3d at 210; <u>Williams</u>, 529 U.S. at 400-402, 405-406. Petitioner's guaranteed Sixth Amendment rights "to be informed of the nature and cause of the accusation" by the Criminal Complaint and "right to effective assistance of counsel," can <u>not</u> be ignored nor undervalued. The Criminal Conspiracy Complaint (<u>Ex</u>. "<u>A</u>" at "p. <u>2</u>") does <u>not</u> comply with 42 Pa.R.Crim.P. Rule 132 (Renumbered 42 Pa.R.Crim.P. Rule 504); therefore, the sham processing of the Complaint violated Petitioner's Fifth, Sixth and, Fourteenth Amendment rights of the Federal Constitution that, defense trial counsel should have known during the year 1988. ¶

9

## B. PREJUDICE

12. In **EVERETT V. BEARD**, 290 F.3d 500 (3rd Cir. 2002), habeas petitioner Everett argued his trial counsel was ineffective for failing to raise objections to the accomplice liability charge on both federal due process and Pennsylvania law, that the Third Circuit Court Of Appeals agreed denied him a fair trial, *id.*, at 515. Everett stated that a federal court must review a petitioner's defense trial counsel's performance at the date and time of petitioner's State court proceedings (as in this case of Petitioner, occurred between the dates October 24, 1988 to May 26, 1989 subsequent to Petitioner's arrest dated September 2, 1988), *id.*, at 509. There is no excuse as to why Petitioner's defense trial counsel failed to object to the Commonwealth's *invalid* Criminal Conspiracy Complaint (Ex. "A" at "p. 2"). ¶

13. This Court can *not* negate the fact that Petitioner is entitled "to be informed of the nature and cause of the accusation" by the Criminal Complaint and "right to effective assistance of counsel," as guaranteed by the Sixth Amendment of the Federal Constitution for the protected "Due Process Clauses" and "Equal Protection Of The Law Clause" by both the Fifth and Fourteenth Amendments of the Federal Constitution and Article 1, § 9, of Pennsylvania's Constitution. Appel raised constructive denial of counsel claims, from trial counsel to appellate counsel. Petitioner's defense trial counsel was also direct appellate counsel, who failed to object to the *invalid* Criminal Conspiracy Complaint (Ex. "A" at "p. 2") prior to trial, trial and, in direct appeal; that establishes "cause" from the default, for this Court to consider this claim since it reveals that a "fundamental miscarriage of justice" occurred to Petitioner because, the State's trial court premise its authority to instruct the jury on accomplice liability from the *invalid* Criminal Conspiracy Complaint. See Petitioner's Trial N.T. at "pp. 580-583; pp. 587-588," (5/26/1989). Therefore, the *invalid* Criminal Conspiracy Complaint constitutes Petitioner's criminal conviction judgment is *void*, which defense trial counsel should have raised in earlier State court proceedings, *id.*, Appel, 250 F.3d at 214-217. ¶

10

14. At the time of Petitioner's arrest dated <u>September 2, 1988</u>, the Commonwealth's Criminal Complaint for 42 Pa.R.Crim.P. Rule 132 had to comply in relevant part to the statutory language as the following:

> "Rule 132. <u>CONTENTS OF COMPLAINT</u>.
> Every complaint shall contain:
> (1) the name of the affiant
> (2) the name and address of the defendant, or if unknown, a description of the defendant as nearly as may be;
> (3) a direct accusation to the best of the affiant's knowledge, or information and belief, that the defendant violated the penal laws of the Commonwealth of Pennsylvania;
> (4) the date when the offense is alleged to have been committed;
> (5) the place where the offense is alleged to have been committed."

<u>Id</u>., 42 Pa.R.Crim.P. Rule 132(1)(2)(3)(4)(5) (Renumbered 42 Pa.R.Crim.P. Rule 504(1)(2)(3)(4)(5)). ¶

15. Petitioner's defense trial counsel should have known that the Criminal Conspiracy Complaint to homicide (<u>Ex</u>. "<u>A</u>" at "<u>p. 2</u>"), was in fact <u>invalid</u> because, its devoid the essential information legislatively required for sufficient notice and processing by the law of this Commonwealth. Petitioner was <u>never</u> provide with a copy of his Criminal Complaint (because only trial counsel was provided it). This is precisely why Justice Story's famous opinion commands federal review from the State's sham processing of criminal complaints that, obstruct the regular administration of justice. These facts, discussed in more detail (<u>Ubi</u> <u>supra</u> at ¶¶ <u>8-9</u> at "<u>p. 8</u>" in this <u>Petitioner's Fed.R.Civ.P. Rule 60(b)(1)(2)(3)(4) and (6) Motion</u>). ¶

16. In <u>UNITED STATES V. CRONIC</u>, 466 U.S. 648 (1984), our Supreme Court stated that "unless the accused receives effective assistance of counsel, to ensure fairness in the adversary criminal process, a serious risk of <u>injustice</u> infects the trial itself," <u>id</u>., at 655-656. The <u>Cronic</u> Court stated: "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceedings," <u>id</u>., at 659 n. 25. <u>Cronic</u> stated the undermined proper functioning of the adversarial process is sufficient for ineffectiveness of counsel, <u>id</u>. at 659-660 & n. 25. <u>See</u> <u>COMMONWEALTH V. KAVUSAK</u>, 58 D & C.2d 695 (1972). ¶

11

II.   THE STATE'S PROSECUTOR COMMITTED FRAUD UPON THE COURT BY ALLEGING PETITIONER CAUSED THE VICTIM'S HEAD INJURIES, KNOWING IT WAS FALSE

II.   BACKGROUND

17.   Prior to Petitioner's arrest, prosecution witness, Vernon Eackles, testified for the prosecutor that, William Billy Long <u>pistol-whipped</u> Bailey several times upon Bailey's head with his gun, as the following excerpts reveal:

> A.   Boo tried to get up and run, He grazed him with the gun at that time.
>
> Q.   I'm sorry?
>
> A.   He grazed him across his head with the gun.
>
> Q.   By grazed do you mean hit?
>
> A.   <u>Yes, exactly</u>.
>
> Q.   Once he got up, what happened?
>
> A.   He tried to cover up. <u>Again</u>, he was grazed in the head with the gun.

Long Brothers Coroner's Inquest N.T. at "p. <u>17</u>, (Ln. <u>5-10</u>); p. <u>25</u>, (Ln. <u>4-5</u>)," (9/2/1988)(Emphasis added). ¶

18.   Petitioner was arrested after the Long brothers' coroner inquest hearing. Prior to Petitioner's trial, at the Long brothers' tyrial, the defense trial counsel for Blossie Dusty Long, elicited testimony from prosecution witness, Vernon Eackles that, his brother William Billy Long <u>pistol-whipped</u> Bailey in the back of Bailey's head, as the following excerpt reveals:

> Q.   Can you tell us what part of the head, sir?
>
> A.   It was like towards the <u>back</u>. When Boo jumped straight up he was grazed with the gun <u>across</u> his <u>head</u>. I can't tell you which part of the head it was.

Long Brothers Trial N.T. at "p. <u>158</u>, (Ln. <u>3-6</u>)," (1/30/1989)(Emphasis added).¶

19.   Therefore, the prosecutor already knew that Petitioner did <u>not</u> cause Bailey's head injuries. Prior to Petitioner's trial, the prosecutor stated on the record as an officer of the court after all testimony was entered in the Long brothers' trial that, he could <u>not</u> say nor prove that Petitioner struck Bailey in the head with and alleged baseball bat causing Bailey's head injuries, as the following excerpts reveal:

12

> MR. DePASQUALE: However, I would like to call to the Court's attention after all the testimony was in on the Long case, Mr. Radoycis represented on the record, Pages 809 and 810 that, and I quote, "We do not know specifically which one of the characters struck him in the head causing all those injuries. Nobody can say for certain that he definitely and without question struck him in the head." He's referring now to Curtis Brandon. I think the prosecution has already stated on the record that they are unsure, that it is unsure, I should say, of the identity of the perpetrator of the blows to the head.
> 
> Mr. Brandon is on trial for that. The prosecution may have doubts about its own case.
> 
> Nevertheless, given the verdict in the Long case, given the fact that the prosecution has already stated for the record after the close of testimony in the Long case that it was unsure of the identity of Curtis Brandon as having been the perpetrator of the blows to the head, I think, and along the lines which you were raising, that it's very unfair in this case.

Petitioner's Trial N.T. at "p. 16, (Ln. 23-25); p. 17, (Ln. 1-23)," (5/19/1989).

> MR. ELASH: Your Honor, in our motion to dismiss the conspiracy count, basically we would like to reiterate what Mr. DePasquale said concerning the prosecution and how they had viewed this case. Mr. Radoycis, after having had the benefit of two coroner's inquest, an extensive trial with the Longs, he said on the record I believe as an officer of Court, we can take him by what he says, they cannot show whether, in fact, Curtis Brandon was the individual that wielded this bat.
> 
> They could also not show from this record and this trial, which was in front of this Court, they could not also show any correlation between Curtis Brandon and the Long brothers or any other type of overt activity that would lend itself to bring him in on a conspiracy theory.
> 
> THE COURT: You are right. Of course, had you been here for the William Long sentencing and read that pre-sentencing report, it was interesting to note that his statement regarding how they all arrived there at the same time changed substantially from the testimony he gave at trial.

Petitioner's Trial N.T. at "pp. 29-30," (5/19/1989).

> THE COURT: Yes. First, the Defendant is referring to William Long in this report. During the day, various family members and others congregated at Stephanie's mother's house and the Defendant's house, and they discussed the incident and gathered information about Bailey by phone. They learned that he would probably appear at a local play field to practice football, and the Defendant and two of his brothers planned to approach Bailey to warn him to stay away from Stephanie since she had filed a complaint against him. The Defendant stated he took with him a gun he owned since he would be approaching a hostile environment, that is, one consisting of Bailey and his peers and teammates.

13

> MR. DePASQUALE: But the name "Curtis Brandon" is <u>never</u> mentioned in that pre-sentence report?
>
> THE COURT: <u>No. No.</u> Other names are mentioned in the pre-sentence report.

Petitioner's Trial N.T. at "pp. <u>368-369</u>," (5/24/1989)(Emphasis added).   ¶

## II.   DISCUSSION

20.   The above-stated excerpts reveal that prosecutor, Mr. Radoycis, intentionally was committing fraud upon the court, by insisting on prosecuting Petitioner for Bailey's head injuries when, he knew Petitioner did <u>not</u> commit the alleged act because, it was already established prior to Petitioner's arrest that William Billy Long <u>pistol-whipped</u> Bailey in Bailey's head and, with a reckless disregard for the truth, by misrepresentations, consisting of prosecutorial misconduct, the prosecutor still continued to commit fraud upon the court, as the following excerpts reveal:

> MR. ELASH: We would submit that weighs heavily in his favor and can be considered at this time, because, Your Honor, what we're faced with then, we are faced with going into a trial, having a homicide charge and having a conspiracy charge when, the district attorney by his own words unequivocally says he <u>cannot</u> link Curtis Brandon with the baseball bat, that he <u>was,</u> in fact, the person with the baseball bat.
>
> MR. RADOYCIS: That's a misrepresentation of that argument.
>
> MR. ELASH: It's right <u>on the record</u>.
>
> THE COURT: I'll look at that. I don't recall the context of those statements, but I'll look at it. I'm not certain, though that even that would put me in a position where I would be obliged to grant a motion to dismiss the case without having heard the evidence. I'm not saying that if the evidence rose no further to what was presented the last time that I would overrule a demurrer. I'm not saying that. I'm just saying I think the evidence has to be presented.
>
> MR. ELASH: If, in fact, their testimony is different than what was said in this case, then it's convoluted and contradictory. In that type of case, the Court would be wrong to present that to the jury, also. So I cannot see how the evidence can change. If it does change in any way, it's going to be contradictory to what people have said prior to that so that the Court will have best the evidence that Mr. Radoycis said, which is it's impossible to show that Curtis Brandon did anything. That's the best possible light that the Commonwealth has. If after the Commonwealth's testimony is then heard, it can only be less favorable towards the Commonwealth. That's our argument for the record.

Petitioner's Trial N.T. at "pp. <u>33-35</u>," (5/19/1989)(Emphasis added).   ¶

14

21. Prior to Petitioner's trial, defense trial counsel elicited testimony from the prosecutor's expert witness, Dr. Jasnosz, that a <u>gun</u> could have caused Bailey's head injuries at Petitioner's Coroner's Inquest hearing, as the following excerpt reveals:

> Q. Are you saying that based on your medical opinion you can't make a determination of whether the Y-shaped, specifically the Y-shaped injury, was caused by, say, a <u>butt end of a gun</u> or a baseball bat?
>
> A. It could be caused by a baseball bat. It could be caused by something that's at least five centimeters in length. I would have to see the gun, but possibly, <u>sure</u>, it could be caused <u>by the gun</u> if it's at least five centimeters in length and straight.

Petitioner's Coroner's Inquest N.T. at "p. <u>39</u>, (Ln. <u>7-17</u>)," (10/24/1989). ¶

22. Petitioner's defense trial counsel elicited testimony from Dr. Durham that, Bailey's sole immediate cause of death was the <u>gunshot wound</u> (<u>not</u> attributed to Petitioner). See Petitioner's Coroner's Inquest N.T. at "p. <u>19</u>, (Ln. <u>6-9</u>)," (10/24/1988)(Emphasis added). The prosecutor elicited testimony from his expert witness, Dr. Jasnosz, that Bailey <u>only</u> had <u>three</u> (<u>3</u>) lacerations upon his head. See Petitioner's Trial N.T. at "p. <u>105</u>, (Ln. <u>12-14</u>); p. <u>110</u>, (Ln. <u>15-19</u>)," (5/24/1989)(Emphasis added). This is significant because, if Petitioner inflicted allegedly <u>two</u> (<u>2</u>) additional blows upon Bailey's head in the baseball field — the physical evidence would have had to result in Bailey having a minimum of <u>five</u> (<u>5</u>) lacerations upon his head; since alleged codefendant William Billy Long had <u>pistol-whipped</u> Bailey repeatedly several times in Bailey's head prior to Bailey entering the baseball field. These facts, discussed in more detail (<u>Ubi</u> <u>supra</u> at ¶¶# <u>17-18</u> at "p. <u>12</u>" in this <u>PETITIONER'S FED.R.CIV.P. RULE 60(b)(1)(2)(3)(4) AND (6) MOTION</u>). This Court should recognize that, if it's supposition that Petitioner did <u>not</u> do it, it is not supposition that Petitioner did do it. The Federal Constitution forbids the prosecutor to employ fraud upon the court, by first having his witnesses' testify that William Billy Long <u>pistol-whipped</u> Bailey in Bailey's head at the Long brothers' trial, then later, in a separate trial for Petitioner — the prosecutor have his witnesses' alleged Petitioner struck Bailey in the head

15

two times with an alleged baseball bat, where that is contrary to the physical evidence because, the Federal Constitution does <u>not</u> condone perjury. <u>See</u> Petitioner's Trial N.T. at "pp. <u>250-256</u>; p. <u>270</u>; pp. <u>284-290</u>; pp. <u>332-333</u>; pp. <u>347-350</u>," (5/25/1989) (the record reveals that all these prosecution witnesses alleged to witness this alleged incident from 90, 70, and 50 yards distance away from Petitioner). This is why the Respondents' withheld Petitioner's court transcripts from this federal Habeas Court in violation of Habeas Rule 5, identical to the fraud in <u>Demjanjuk</u> where the central issue was identity. <u>See</u> <u>DEMJANJUK V. PETROVSKY</u>, 10 F.3d 338 (6th Cir. 1993). ¶

    23. The U.S. government's OSI attorneys knew Demjanjuk was <u>not</u> the Nazi war criminal "Ivan the Terrible" and, intentionally withheld exculpatory information from the court that was in their possession, just to convict Demjanjuk despite his SODDI defense (some other dude did it), <u>id.</u>, at 349. There the <u>Demjanjuk</u> Court stated:

> "1. The Fedorenko Protocols should have been disclosed. They consisted of information provided by a foreign government that supplied some support to Demjanjuk's basic claim from the beginning—that he was a victim of misidentification. The statements of the two former guards at Treblinka identified one of the Ukrainians who operated the gas chambers as "Marchenko." In his statement, taken in 1945 near the end of World War II, the guard Leleko named Nikolai and Marchenko as the "motorist" and stated that Marchenko had cut women's breast with his sword. In addition, the protocols contained the transcription of a detailed tape interrogation of Fedorenko conducted in 1973 by Soviet officials. Fedorenko stated that he remembered two guards at the gas chambers, Nikolay and Ivan. Two Jewish survivors, Rosenberg and Epstein, had also described two operators of the gas chambers called Nikolai and Ivan. Marchenko's given name was Ivan."

<u>Id.</u>, 10 F.3d at 350. ¶

    24. Petitioner's trial transcripts shall reveal that these same exact prosecution witnesses previously testified that they could <u>not</u> identify Petitioner as an assailant in this case and, never mentioned Petitioner in any Homicide Detective reports. The <u>Demjanjuk</u> Court held his Fed.R.Civ.P. Rule 60(b)(6) motion would survive due to the court's inherent power pursuant the All Writs Act, 28 U.S.C. § 1651 because, the proceedings had been tainted by

fraud on the court, that prosecutorial misconduct required intervention, id., at 356. The court stated it could revisit its prior judgment from the year 1985 in its present inquiry due to fraud upon the court by the prosecution, where the Demjanjuk Court stated:

> "Before outlining the additional proceedings, we dispose of the Department of Justice's contention that this court lacks jurisdiction to conduct the present inquiry. The Department argues that we have no power to review our 1985 judgment, particularly in view of the fact that Demjanjuk is now in Israel, having been convicted by an Israeli court for violation of Israeli law. We disagree. This court is proceeding under its inherent power to grant relief, for "after-discovered fraud," from an earlier judgment "regardless of the term of [its] entry." Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250 (1944). Furthermore, nothing requires this court to follow the "cumbersome and dilatory procedure" of sending this issue back to the district court for decision. Id. at 249.
>   The fact that a federal court has the inherent power "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court" was reaffirmed by the Supreme Court at its 1990 term. See Chambers v. NASCO, Inc., ___ U.S. ___, ___, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)."

Id., 10 F.3d at 358. ¶

## C. DEFICIENT PERFORMANCE

25. Petitioner's defense trial counsel's failure to object to the prosecutorial misconduct timely voicing fraud was being committed upon the trial court by the prosecutor and, failure to cross-examine prosecution witness, Vernon Eackles, about William Billy Long pistol-whipping Bailey in Bailey's head with his gun prior to Bailey entering the baseball field, was ineffective assistance of counsel. Trial counsel was also direct appellate counsel. Trial counsel's failure to require the prosecution's case to survive the crucible of meaningful adversarial testing, once the process loses its character as a confrontation between adversaries, the constitutional guarantee of the Sixth Amendment's "right to counsel" by the Federal Constitution is violated, id., Cronic, 466 U.S. at 656-657. See OSBORN V. SHILLINGER, 861 F.2d 612 (10th Cir. 1988). When Osborn's trial counsel failed to inquire of the comparisons between Osborn's and Green's psychiatric history where the doctor examined both men, it was held ineffective assistance of counsel, id., at 629. ¶

D.  PREJUDICE

26. Petitioner was prejudiced by the prosecutor's fraud upon the trial court, by the prosecutor intentionally shifting Bailey's head injuries as acts committed by Petitioner, when he knew prior to Petitioner's trial that William Billy Long pistol-whipped Bailey in Bailey's head with his gun; such reckless disregard for the truth by the prosecutor's misrepresentations and, defense trial counsel's failure to timely voice to the trial court that the prosecutor was committing fraud upon the court and failure to cross-examine prosecution witness, Vernon Eackles, about the fact that William Billy Long pistol-whipped Bailey in Bailey's head with his gun, resulted in the wrongful conviction of Petitioner. Demjanjuk, 10 F.3d at 350; Osborn, 861 F.2d at 629. The Magistrate Judge erred by her assertion that "if defense trial counsel would have examined the witnesses to show someone else caused Bailey's head injuries, Superior Court determined the verdict was fully supported under accomplice liability theory. See Mag. Report second ¶ at "p. 20," (4/15/2003). These facts, discussed in more detail (Ubi supra at ¶¶# 12-23 at "pp. 10-16 in this PETITIONER'S FED.R.CIV.P. RULE 60(b)(1)(2)(3)(4) AND (6) MOTION). Fraud upon the court by the State's prosecutor is a serious violation of Petitioner's protected Fifth, Sixth, and Fourteenth Amendment rights by the Federal Constitution; the Federal Constitution forbids it, which the Magistrate Judge was not apprised of via Petitioner's prior habeas corpus proceedings. ¶

27. This Court can remedy this injustice that was committed against Petitioner, to protect Petitioner's federal substantive rights because, the State's prosecutor was only able to have the trial court charge the jury on accomplice liability from the invalid Criminal Conspiracy Complaint to homicide, where it is not a lesser-included offense charge to Criminal Conspiracy. These facts, discussed in more detail (Ubi supra at ¶¶# 1-16 at "pp. 5-11" in this PETITIONER'S FED.R.CIV.P. RULE 60(b)(1)(2)(3)(4) AND (6) MOTION). In GONZALEZ V. CROSBY, 125 S.Ct. 2641 (2005), the Gonzalez's Court stated: "A motion that seeks to add a new ground for relief, as in Harris, supra, will of course qualify. A motion can also be said to bring a "claim if it attacks the federal court's previous resolution of a claim on the merits,"" where the Supreme Court addressed the Rule 60(b) motion, id., at 2648.  ¶

18

## CONCLUSION

WHEREFORE, for the above-stated facts and reasons, Petitioner prays this Court will grant his Fed.R.Civ.P. Rule 60(b)(1)(2)(3)(4) and (6) Motion pursuant this Court's inherent power.

Respectfully submitted,

By: _____
Curtis Brandon    DV-2954
Box 244
Graterford, PA. 19426-0244
Petitioner, pro se

Date: October 30, 2005